Indialantic, Inc. v. Commissioner.
Indialantic, Inc. v. Commissioner
Docket No. 37274.
United States Tax Court
1953 Tax Ct. Memo LEXIS 163; 12 T.C.M. (CCH) 880; T.C.M. (RIA) 53265; July 31, 1953
*163 B. Dave Bushaw, Esq., 2010 Guarland Building, Detroit, Mich., for the petitioner. Charles Speed Gray, Esq., for the respondent. WITHEY
Memorandum Findings of Fact and Opinion WITHEY, Judge: The respondent has determined deficiencies in petitioner's income tax liability as follows: 1948
$4,300.58
1949
$4,408.03
The issues presented for determination are whether respondent erred (1) in refusing to allow petitioner a deduction for legal, presidential and managerial expenses accrued during the calendar year 1948, payable to Harold H. Emmons, in the amount of $50,000, (2) in refusing to allow petitioner a deduction of one-half of a $3,000 legal service fee accrued during the calendar year 1948, payable to A. W. Sempliner, in the amount of $1,500, and (3) in refusing to allow petitioner a deduction of $28,597.29 in 1949 of an operating loss carried forward from 1948. Respondent concedes error as to the second issue. Findings of Fact Petitioner is a corporation organized under the laws of the State of Florida. It filed its Federal income tax returns for the years 1948 and 1949 on the accrual basis with the collector of internal revenue at Jacksonville, *164 Florida. Petitioner was formed in 1935 to take title to certain property formerly owned by Indialantic Corporation and which was bid in at a foreclosure sale when the Indialantic Corporation was unable to pay the expenses of maintaining the property. In taking over the property the petitioner assumed payment of a number of obligations of Indialantic Corporation which were represented by promissory notes secured by a mortgage. Capital stock of petitioner having a par value of $100 per share was issued in exchange for the notes of Indialantic Corporatioon. The stock was issued to each note holder in an amount of par value equivalent to the principal of his note, plus accrued interest. The total of principal and interest of all the notes was $112,009.81 and the stock issued by petitioner amounted to 1,120 shares. The largest single note obligation was owing to the law firm of Emmons, Orrin & Sleeper, in the amount of $45,131.58 for legal services. Harold H. Emmons was the senior partner of that firm. A certificate for 451 shares of petitioner's stock was issued to the firm. The property acquired by petitioner was an island off the east coast of Florida and consisted of approximately *165 1,200 lots, a hotel, apartment house, casino, swimming pool and bath house, several residences and an eight hole golf course. From the outset, petitioner endeavored to protect the interests of its stockholders. Some of the lots were sold and the hotel, casino and club were leased to other operators. Harold H. Emmons, hereinafter referred to as Emmons, was elected a director and president of petitioner at a meeting of the board of directors at Jacksonville, Florida, on May 15, 1935. It was also decided at this meeting that all officers of the petitioner would serve without compensation until the further order of the board, except where directly specified to the contrary. Emmons held these offices continuously until October 1, 1948. Emmons' law firm was dissolved in 1936 and he received the 451 shares of petitioner's stock as part of his share of the law firm's assets. Emmons had been a practicing attorney since 1899 and represented many prominent clients. He was a business executive of many concerns, was detailed by the Secretary of the Navy in 1917 to handle production of all aviation motors for the United States Government, was Police Commissioner of the city of Detroit in 1941 *166 and was experienced in the real estate business. Emmons devoted a great deal of time to the affairs of petitioner during the 13 1/2 years he was president and a director. He attended 34 directors' meetings, dictated the minutes of nearrly all of those meetings, negotiated with 25 or 30 different groups for the sale and rental of petitioner's property, looked after collections, assisted Florida counsel in having a lien of the Bureau of Internal Revenue on petitioner's property for income taxes of Indialantic Corporation removed from all of petitioner's property except land contracts on 40 lots. These 40 lots were sold at auction and bid in by petitioner. For several years the petitioner was unable to pay real estate taxes on its properties and Emmons handled matters arising from petitioner's failure in this respect. He passed on all bills of petitioner, passed on, approved or corrected and executed all deeds to lots sold, hired the employees and handled relations with them, and handled extensive correspondence for the petitioner. Emmons' time records, which he began to keep a year after he became president of petitioner, showed he devoted 237 days to petitioner's affairs. These records *167 did not go into great detail as to his time spent during the last five years of his tenure as president. During this period, Emmons was not reimbursed for any of his office expenses by the petitioner. In 1938 Emmons was involved in legal proceedings instituted against him for an accounting of his trusteeship of an estate set up for the benefit of crippled children, called the Cummings Foundation. The suit was discontinued and Emmons transferred on June 8, 1942, to the Detroit Orthopaedic Clinic, hereinafter called the Clinic, his 451 shares of petitioner's stock. The Cummings Foundation subsequently merged with the Clinic. At the time of the transfer Emmons and the Clinic agreed that he would have the sole voting rights of the 451 shares until the petitioner was substantially liquidated. On December 8, 1944, approximately 10 years after Emmons' employment, petitioner's board of directors directed that $350 be paid to him for legal services in connection with the liquidation of certain timber assets belonging to petitioner and that $5,000 be paid to him on account of services rendered since the company's incorporation. He received two additional payments of $5,000, authorized by the *168 board of directors, on December 18, 1945, and December 31, 1947, on account of his services. On or about September 18, 1946, Edwin L. Ecclestone, hereinafter referred to as Ecclestone, who had previously acquired the 451 shares of petitioner's stock from the Clinic, made demands on Emmons and the petitioner that the certificate representing the shares of such stock be transferred to him without being subject to any reservation of voting rights. Without waiting for Emmons and the petitioner to pass on said demands, Ecclestone filed three proceedings against petitioner and Emmons in the Circuit Court for the County of Wayne, State of Michigan. In two of the suits he sought to have the shareholder's voting rights which had been retained by Emmons cancelled and to compel the petitioner to transfer the shares of stock to him without reservation as to voting rights. Prior to the filing of the suits, Ecclestone and Emmons, representing the board of directors, discussed a settlement of the controversy. Ecclestone was advised by Emmons that his demands would be granted if he purchased the balance of petitioner's outstanding stock for $200 per share and also paid an outstanding claim of $50,000 *169 that the petitioner owed to Emmons for services he had rendered. Ecclestone refused. On September 24, 1946, petitioner's board of directors authorized its president and secretary to employ counsel and make proper legal answer to the three suits instigated by Ecclestone. Attorney A. W. Sempliner was employed by the petitioner, and Thomas G. Long and Emmons' son, Harold H. Emmons, Jr., were employed by Emmons to represent him in the three suits brought by Ecclestone. On May 29, 1947, Emmons reported to the board of directors that the suits had been decided in favor of the petitioner and Emmons. Ecclestone appealed from the decision of the Wayne County Circuit Court. However, the Michigan Supreme Court on December 3, 1947 (319 Michigan Reports 248), affirmed the decision of the Wayne County Circuit Court. Thereupon the bill for legal services rendered to petitioner by A. W. Sempliner in the amount of $3,000 was approved and paid. The petitioner did not pay any part of Emmons legal expenses in the matter of the three suits. A meeting of the board of directors of petitioner was held on June 8, 1948, and the directors were advised as follows: * * * "that Messrs. E. Llwyd [Lloyd] *170 Ecclestone and Roger M. Stevens desire to consummate the transaction by which the Company would propose to all the stockholders except Ecclestone that the Company purchase their stock, retire the same, reduce the capital stock by the number of shares accepting the offer and filing the necessary amendment to the Certificate of Incorporation to effectuate the reduction, all as set forth in a draft of proposed agreement which was considered by the meeting; By this agreement the company would also liquidate its indebtedness to Harold H. Emmons for the unpaid balance due him for his services since the organization of the company, both legal, presidential and managerial." Thereupon the passage of the following resolution was duly moved, seconded and carried unanimously: "RESOLVED that the officers be and they are hereby authorized, instructed and empowered to proceed with the consummation of this plan and to that end to call a meeting of the stockholders to be held July 12, 1948 at 10 A.M., at 939 Majestic Building, Detroit, Mich." The passage of the following resolution was then duly moved, seconded and carried unanimously: "RESOLVED that for the purposes of consummating this transaction *171 the unpaid balance due Harold H. Emmons for his services since the organization of this Company, both legal, presidential and managerial be fixed at the sum of $50,000.00, this amount being satisfactory to him; but that in the event that the said transaction shall not be completed, this sum shall not thereafter be considered binding on either party." The passage of the following resolution was duly made, seconded and carried unanimously: "RESOLVED that it is for the benefit of the corporation that the capital stock of the corporation be purchased by the corporation at $200.00 per share and that an offer to that effect be made to each stockholder except E. Llwyd [Lloyd] Ecclestone and that thereupon the certificate of incorporation of this company be amended to reduce the capital stock of the corporation by the number of shares accepting said offer; "AND BE IT FURTHER RESOLVED that the officers be and they are hereby authorized, instructed and empowered to present such amendment to the stockholders meeting thus called, and if the same shall be duly authorized by said meeting, to execute and file the same with the Secretary of State of Florida, and to do all acts and take all *172 steps necessary to carry into effect the resolutions passed by this meeting." The about resolutions were adopted by the stockholders of petitioner at meetings held July 12, 1948, August 16, 1948, and September 27, 1948. Emmons had voting rights for 451 shares and a proxy for 328 shares from his son and daughter which were enough for majority control of the petitioner. After these resolutions were adopted Emmons released his retained voting rights. Petitioner's gross income, legal and audit expense and net income for the years 1935 to 1949 were as follows: Year
Gross Income
Legal & Audit Expense
Net Income
1935 *
$ 3,318.56
$ 47.50
($ 3,539.72)
1936 **
1937
7,617.02
928.50
( 533.79)
1938
11,574.04
5,692.69
( 3,650.11)
1939
5,297.14
341.20
( 6,706.62)
1940
9,750.84
489.98 ***
475.12
1941
13,742.98
350.00
1,079.99
1942
4,071.88
469.58
( 2,348.86)
1943
5,711.57
502.15
( 1,545.66)
1944
22,008.90
5,350.00
8,653.63
1945
13,515.23
6,183.70
1,691.40
1946
9,415.48
868.79
1,334.63
1947
14,129.41
5,000.00
996.11
1948
30,285.86
55,498.16
( 30,928.03)
Total
$150,438.91
$81,722.25
($35,021.91)
1949
$ 29,124.03
$ 1,875.47
$18,161.11
*173 Petitioner claimed as a deduction in 1948 Emmons' compensation in the amount of $50,000 and A. W. Sempliner's legal fee in the amount of $3,000 and reported a net loss on the corporation's income tax return for that year in the amount of $30,928.03. In the succeeding calendar year, 1949, $28,597.29 of this loss was deducted as an operating loss. Reasonable compensation for Emmons for services rendered over the 13-year period is $32,500. In view of the fact he received $15,000 of that amount prior to the year 1948, the petitioner is entitled to a deduction of $17,500 in the taxable year 1948. Opinion Petitioner contends that the services rendered by Emmons were ordinary and necessary to petitioner's business and that the salary of $50,000 was reasonable compensation for such services. Section 23 (a) (1) (A), Internal Revenue Code *174 . [1] Respondent makes two principal contentions, namely, that the payment to Emmons was solely in consideration for his relinquishment of his voting rights or, if not solely for that purpose, the amount of $50,000 constituted unreasonable compensation for services rendered to petitioner by Emmons. The question of what constitutes reasonable compensation for services rendered is a factual one dependent *175 upon the particular facts of each individual case. Hoffman Radio Corporation v. Commissioner, 177 Fed. (2d) 264. Some of the factors to be considered include the employee's qualifications; the nature, extent and scope of the employee's work; the size and complexities of the business; a comparison of compensation paid with the gross income and the net income and the prevailing economic conditions. Mayson Mfg. Co. v. Commissioner, 178 Fed. (2d) 115. We have no doubt as to Emmons' skill, ability and experience. He had a successful law practice, rendered service to the city of Detroit and the United States Government and devoted extensive time to petitioner, as set out in our findings. However, at the same time the determination of reasonable compensation must be consonant with the results obtained from the services and with the ability of the employer to pay for the services. From a consideration of all of the evidence before us, we have found as a fact that reasonable compensation for Emmons' services for the 13-year period was $32,500. Of that amount a total of $15,000 was paid in 1944, 1945 and 1947 and was allowed by respondent for those years. The balance *176 of $17,500 is deductible in 1948. Having reached the foregoing conclusion, it is unnecessary for us to determine whether any part of the $50,000 was for the relinquishment of voting rights on 451 shares of petitioner's capital stock. In determining the amount of petitioner's operating loss for 1948, if any, and the amount, if any, deductible therefore by petitioner in 1949, effect will be given to our determination above as to the amount deductible by petitioner as compensation to Emmons. Decision will be entered under Rule 50. Footnotes
*. Statement dated March 14, 1938, attached to the amended 1953 return. ↩
**. A 1936 return was filed with the following notation: "The operations of the corporation have been suspended during the above year by reason of litigation over a lien placed on its property." ↩
***. Legal expense of $2,100 incurred in this year charged directly to surplus.↩
1. SEC. 23. DEDUCTIONS FROM GROSS INCOME. In computing net income there shall be allowed as deductions: (a) Expenses. - (1) Trade or Business Expenses. - (A) In General. - All the ordinary and necessary expenses paid or incurred during the taxable year in carrying on any trade or business, including a reasonable allowance for salaries or other compensation for personal services actually rendered; traveling expenses (including the entire amount expended for meals and lodging) while away from home in the pursuit of a trade or business; and rentals or other payments required to be made as a condition to the continued use or possession, for purposes of the trade or business, of property to which the taxpayer has not taken or is not taking title or in which he has no equity.↩